UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., assignee of LBX Company, LLC dba LBX Financial Services, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 0045 No. 07 C 1126 |
| v. | ) ) | Judge Joan H. Lefkow |
| M.D.M. LEASING CORP., ROBERT M. RYAN, and UNITED DEMOLITION INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff De Lage Landen Financial Services, Inc. ("DLL"), as the assignee of LBX Company, LLC d/b/a LBX Financial Services ("LBX"), brought suit against defendants M.D.M. Leasing Corp. ("MDM"), Robert M. Ryan, and United Demolition, Inc. ("United") for breach of contract and replevin.[1] Before the court is DLL's motion for summary judgment on the replevin count. For the reasons discussed below, DLL's motion [#75] will be denied.

### FACTUAL BACKGROUND[2]

On April 12, 2006, LBX and MDM entered into an agreement ("the Agreement") in which LBX loaned MDM $524,230.00 to purchase certain equipment—specifically, one Link-Belt 460 LX S/N K7J5-9420 Excavator and one Genesis 1000R S/N 10357R Shear, including all

---

[1] Jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.

[2] Unless otherwise noted, the parties have agreed to the facts recited here, which were taken from the parties' respective statements of material fact and responses thereto.

additions, attachments, accessions, substitutions, replacements, and proceeds thereto ("the Equipment")—and MDM granted LBX a security interest in that equipment. Under the Agreement, MDM was obligated to pay to LBX sixty consecutive monthly payments, each in the amount of $10,667.17. In order to induce LBX to enter into the Agreement, United executed a corporate guaranty in which it agreed to be unconditionally liable for the debt of MDM. DLL alleges that LBX subsequently assigned all of its rights, title and interest in the Agreement and the Equipment to DLL. DLL also alleges that MDM defaulted under the terms of the agreement by failing and refusing to make payments when they were due. DLL further alleges that it has made demand upon defendants for return of the equipment, but that defendants remain in possession and control of the equipment. MDM denies that the assignment took place, that it defaulted, or that DLL made demand on it.

## STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in the depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.

2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## DISCUSSION

DLL argues that it is entitled to summary judgment on its replevin claim because there is no genuine issue of material fact as to whether (1) it has a security interest in the Equipment on which it is entitled to foreclose, or (2) it has satisfied the elements of a claim for replevin. In response, defendants argue that the court must deny summary judgment because there are genuine issues of material fact as to (a) whether DLL has rights in the equipment; (b) whether, prior to the replevin action being filed, DLL made a proper demand upon MDM or United for the return of the Equipment; or (c) whether the excavator (one of the two pieces that comprise the Equipment) is in the possession of the defendants.

A security interest is enforceable against a debtor with respect to the collateral if

(1) value has been given;
(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
(3) one of the following conditions is met:
    (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . .

810 Ill. Comp. Stat. 5/9-203. DLL has presented evidence, unrebutted by defendants, that (1) LBX gave value for its interest in the equipment, (2) MDM, as title holder of the Equipment, granted LBX a first priority security interest therein, and (3) defendants authenticated a security

3

agreement that provides a description of the collateral. DLL has thus shown that, under the Agreement, LBX has an enforceable security interest in the Equipment.

In order to succeed on a cause of action for replevin under Illinois law, the plaintiff must prove that (1) it is the owner of the relevant property or lawfully entitled to the possession thereof; (2) that the property is wrongfully detained by the defendant; and (3) that the property has not been taken for any tax, assessment, or fine levied by virtue of any Illinois law, against the property of such plaintiff, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff. 735 Ill. Comp. Stat. 5/19-104; *First Illini Bank* v. *Wittek Indus., Inc.*, 634 N.E.2d 762, 763, 261 Ill. App. 3d 969, 199 Ill. Dec. 709 (Ill. App. Ct. 3d Dist. 1994).

With respect to the first element of a cause of action for replevin, DLL asserts that LBX assigned for value all of its rights, title and interest under the Agreement to DLL, including the enforceable security interest in the Equipment. In support of this assertion, DLL submits the affidavit of Mark Powers, one of its employees, as well as a copy of a UCC Financing Statement Amendment granting DLL a first priority security interest in the Equipment. Pl.'s Statement of Material Fact ("SoF"), Ex. 2 (Powers's Aff.), ¶ 10; *Id.*, Ex. 2 (Powers's Aff.), Ex. C. Powers also avers that defendants defaulted by failing and refusing to make payments in the manner promised under the Agreement.[3] *Id.*, Ex. 2 (Powers's Aff.), ¶ 11–14.

---

[3] DLL has submitted evidence that defendants are in default under the Agreement, as is necessary to show its right to possession of the Equipment. Defendants deny the default but fail to support it with evidence. Nevertheless, DLL has not requested summary judgment on its breach of contract claim, suggesting that DLL believes a trial is necessary on that claim. In any event, because summary judgment is being denied on other grounds, it is unnecessary to resolve

4

In response, defendants argue that issues of fact remain as to whether DLL has rights in the equipment. Specifically, defendants "have questioned the validity of LBX's alleged assignment of rights to DLL and requested production of said assignment." Defs.' Am. Resp. at 6. Defendants cite *Kaplan* v. *Shure Bros., Inc.*, 266 F.3d 598 (7th Cir. 2001), for the proposition that "[u]nder Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, . . . or by an intended third-party beneficiary of the contract." *Id.* at 602 (citations omitted). As *Kaplan* further notes, "Privity accompanies the valid assignment of rights under a contract because it puts the assignee in the shoes of the assignor—because the assignor was in privity with the opposite contracting party, so is the assignee." *Id.* (internal quotation marks omitted). Defendants argue that their answer, in which they deny DLL's allegation that it has rights in the equipment, contradicts DLL's allegations. Defendants further cite the affidavits of William Marino and August Pusateri, presidents of MDM and United, respectively, which affirm that "*neither were aware* of any assignments of the rights by LBX to DLL nor was any evidence presented to them that DLL has rights in the equipment." Defs.' Am. Resp. at 7–8 (emphasis added).

Marino and Pusateri's averments that they have not received notice of LBX's assignment of rights to DLL, however, do not create a genuine issue of material fact where DLL has presented unequivocal evidence that such an assignment took place. *See Unterreiner* v. *Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211 (7th Cir. 1993) (citing *Posey* v. *Skyline Corp.*, 702 F.2d 102, 106 (7th Cir. 1983)) (noting that a plaintiff's averment that he merely *never saw* an ADEA notice posted on a bulletin board does not create a genuine issue of material fact

---

that issue now.

5

where the defendant company has presented an affidavit in which a company representative recounted that he had posted such a notice). Whereas DLL has submitted Powers's affidavit affirmatively stating that the assignment took place, as well as a copy of the UCC Financing Statement Amendment, Marino and Pusateri merely aver that they are unaware of any such assignment. *See Posey*, 702 F.2d at 106 (holding that an affiant's statement that he never saw an ADEA notice posted on a bulletin board is not the same as an averment that the notice was not in fact conspicuously posted). As the Seventh Circuit has made clear, "the mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment." *Id.*

With respect to the second element of a cause of action for replevin—which requires the plaintiff to establish that the property is wrongfully detained by the defendant—a defendant's possession of the property is not considered wrongful until demand has been made and refused. *First Illini Bank*, 634 N.E.2d at 763. Thus, "If the defendant has lawful possession of the property, a replevin action cannot be maintained until the plaintiff has made a demand for the surrender of the property and the defendant has refused." *Id.* A demand is not necessary, however, "where the circumstances indicate its futility." *Id.*

As evidence of its demand, DLL relies again on the affidavit of Powers, who avers that "DLL demanded of [defendants] that they deliver or surrender the Equipment, but [defendants] have refused to do so, and the property is still being detained by [defendants]." Pl.'s SoF, Ex. 2 (Powers's Aff.), ¶ 18.

In response, defendants argue—without citation to any legal authority—that "[t]he fact that the Answer denies that any notice or demand was provided or made establishes for this

6

Court an issue of fact." Defs.' Am. Resp. at 11. Defendants also argue that their "Third Affirmative Defense challenges DLL's notice of demand and prevents judgment because it creates issues of fact concerning DLL's satisfaction of the elements of replevin." *Id.* Both of these arguments fail, however, because under Rule 56, a non-movant cannot rely on the pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." *Griffin* v. *City of Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996) (citing Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).

Defendants further argue that the affidavits of Marino and Pusateri, who assert that "neither DLL nor LBX made any demand either orally or in writing for the return of the Equipment," *e.g.*, Defs.' Am. Resp., Ex. C (Marino's Aff.), ¶ 14, create a genuine issue of material fact. On the issue of whether demand was made—in sharp contrast to the issue of assignment, discussed above—Marino and Pusateri's affidavits directly contradict Powers's averment that DLL made demand on the defendants.

In reply, DLL argues that defendants are "well aware that DLL attempted to repossess the Equipment on several occasions and that Robert Ryan, of MDM, refused to deliver possession of the Equipment to DLL on December 4, 2006." Pl.'s Reply at 4–5. In support of this assertion, DLL submits an additional affidavit, that of Douglas Shore, a member of its Legal and Recovery Department, averring that "the agent for the repossession company attempted to recover the equipment and demanded the return of the same on behalf of DLL on several occasion, but was denied access to the premises by Robert Ryan, of MDM." Pl.'s Resp. to Defs.' SoF, Ex. 1 (Shore's Aff.), ¶ 15. DLL's additional submissions do not allow for summary judgment, however, as Marino and Pusateri's averments that DLL never made such a demand

7

create a genuine issue of material fact on that issue. *See Payne* v. *Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.").

Absent a showing of futility,[4] "the demand requirement remains an essential part of wrongful detention in a replevin action." *First Illini Bank*, 634 N.E.2d at 764. Thus, because a genuine issue of material fact remains as to whether DLL made demand on the defendants, summary judgment must be denied.[5]

## CONCLUSION AND ORDER

For the reasons discussed above, DLL's motion for summary judgment [#75] is denied.

Dated: July 15, 2008      Enter:_____
                                                        JOAN HUMPHREY LEFKOW
                                                        United States District Judge

---

[4] DLL appears to suggest that demand was unnecessary because circumstances indicated its futility, arguing, "Any demand for the return of the Equipment, *subsequent to MDM's refusal to turn it over in December 2006*, would have been completely useless and was not required by law." Pl.'s Reply at 5 (emphasis added). DLL's argument is of questionable relevance, however, as it logically requires that a demand was made in December 2006, rendering moot the issue of whether a demand would have been futile.

[5] Having established that a genuine issue of material fact exists, the court need not consider defendants' third argument in opposition to DLL's motion for summary judgment—that the excavator (one of the two pieces that comprise the Equipment) is not in the possession of the defendants.